IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | DOCKET NO. 3:25cr238-KDB |
| ) | |
| ) | **SECOND SUPERSEDING BILL OF** |
| v. ) | **INDICTMENT** |
| ) | |
| (1) ROBERT LEWIS ELLIOTT, III, ) | 18 U.S.C. § 371 |
| (2) DEVIN ALONZO ELLIOTT, ) | 18 U.S.C. § 472 |
| (3) TIUNTAE DIXON, and ) | 18 U.S.C. § 2 |
| (4) CHRISTOPHER TERRELL JACKSON ) | |
| _____ ) | |

**THE GRAND JURY CHARGES:**

At the specified times and at all relevant times:

**Introductory Allegations**

1. Beginning no later than June 26, 2025, and continuing through at least July 22, 2025, the defendants, ROBERT LEWIS ELLIOTT, III ("R. ELLIOTT"), DEVIN ALONZO ELLIOTT ("D. ELLIOTT"), TIUNTAE DIXON "(DIXON"), and CHRISTOPHER TERRELL JACKSON ("JACKSON") engaged in a conspiracy with each other and with others known and unknown to the grand jury to pass and utter, and attempt to pass and utter, counterfeit Federal Reserve Notes to purchase expensive jewelry in retail stores, including a retail store in Pineville, North Carolina, and two retail stores in Los Angeles, California, and elsewhere. During the conspiracy, R. ELLIOTT, D. ELLIOTT, DIXON, JACKSON and their co-conspirators, using counterfeit Federal Reserve Notes, obtained approximately $700,000 in jewelry, including but not limited to Rolex, Patek Phillipe, Audemars Piguet, and Cartier watches.

2. R. ELLIOTT was a resident of Okolona, Mississippi.

3. D. ELLIOTT was a resident of Okolona, Mississippi.

4. DIXON was a resident of Tupelo, Mississippi.

5. JACKSON was a resident of Seale, Alabama, and the Atlanta, Georgia area.

6. Jewelry Store #1 was a jewelry store located in Pineville, North Carolina. B.H. was an employee of Jewelry Store #1.

1

7.    Jewelry Store #2 was a jewelry store located in Los Angeles, California. L.S. was an employee of Jewelry Store #2.

8.    Jewelry Store #3 was a jewelry store located in Los Angeles, California. T.B. and N.S. were employees of Jewelry Store #3.

## COUNT ONE
18 U.S.C. § 371
(Conspiracy to Pass Counterfeit Obligations)

9.    The Grand Jury realleges and incorporates by reference herein, the allegations contained in paragraphs 1 through 8 of the Second Superseding Bill of Indictment, and further alleges that:

10.    Beginning no later than June 26, 2025, and continuing through at least July 22, 2025, in Mecklenburg County, within the Western District of North Carolina, Los Angeles County, and elsewhere, the defendants,

**ROBERT LEWIS ELLIOTT, III,
DEVIN ALONZO ELLIOTT,
TIUNTAE DIXON, and
CHRISTOPHER TERRELL JACKSON**

knowingly conspired and agreed with one another, and with others known and unknown to the grand jury, to commit an offense against the United States, specifically, to knowingly and with intent to defraud, pass, utter, and publish, and attempt to pass, utter, and publish, falsely made, forged, and counterfeited obligations of the United States, in violation of Title 18, United States Code, Section 472.

### MANNER AND MEANS

11.    It was part of the conspiracy that R. ELLIOTT, D. ELLIOTT, DIXON, JACKSON, and others known and unknown to the grand jury passed counterfeit United States currency to purchase Rolex, Patek Phillipe, Audemars Piguet, and Cartier watches, and other high-end jewelry.

### OVERT ACTS

12.    In furtherance of the conspiracy and to effect the objects and purposes thereof, R. ELLIOTT, D. ELLIOTT, DIXON, JACKSON, and their co-conspirators committed one or more of the following overt acts, among others, in the Western District of North Carolina and elsewhere:

## Jewelry Store #1 – Pineville, NC

    a. On or about June 26, 2025, R. ELLIOTT, D. ELLIOTT, and JACKSON entered Jewelry Store #1 in Pineville, North Carolina, and told B.H. that they wanted to purchase approximately $300,000 in high-end watches and other pieces of jewelry.

    b. On or about June 26, 2025, R. ELLIOTT, D. ELLIOTT, and JACKSON provided B.H. with a $1,000 cash deposit for the purchases and agreed to return the following day to complete the transaction.

    c. On or about June 27, 2025, R. ELLIOTT, D. ELLIOTT, and JACKSON returned to Jewelry Store #1 to purchase the ordered items.

    d. R. ELLIOTT, D. ELLIOTT, and JACKSON agreed to finalize the transaction and requested that the money be counted in the back office. B.H. agreed, and escorted R. ELLIOTT and JACKSON to the back office. D. ELLIOTT stood outside the back office distracting another employee.

    e. R. ELLIOTT provided B.H. with a $10,000 stack of genuine $100 Federal Reserve Notes, which B.H. ran through an electronic money counter. After running the stack through the electronic money counter, B.H. also used a counterfeit detection pen on the $100 Federal Reserve Notes. Upon completing the count of the stack, B.H. handed R. ELLIOTT back the counted stack.

    f. When R. ELLIOTT took the stack back from B.H. he placed a rubber band around the stack. Using a sleight-of-hand technique, R. ELLIOTT then exchanged the genuine stack of Federal Reserve Notes with a stack of counterfeit Federal Reserve Notes and then placed the counterfeit Federal Reserve Notes onto the safe.

    g. R. ELLIOTT then pretended to hand B.H. a new $10,000 stack of genuine $100 Federal Reserve Notes, but in reality, he recycled the previous stack of genuine currency. B.H. counted this stack and again used a counterfeit detection pen. B.H. handed R. ELLIOTT back the counted stack, and he again placed the counterfeit Federal Reserve Notes onto the safe. This process was repeated until all the counted money was placed into the store safe.

    h. R. ELLIOTT, D. ELLIOTT, and JACKSON provided B.H. with approximately $299,900 in counterfeit Federal Reserve Notes depicted in the picture below.



i. Upon completion of the count, B.H. began finalizing the sale through the store's computer system, and B.H. asked R. ELLIOTT to produce his identification. R. ELLIOTT stated that he wished to add additional pieces to the order but needed to return to his car to get more cash, as well as his identification.

j. R. ELLIOTT, D. ELLIOTT, and JACKSON then fled the store with the following jewelry and never returned:

      i. Patek Phillipe diamond

     ii. Audemars Piguet watch

    iii. Rose Cuban link chain

    iv. Cartier watch

     v. Rolex Bust Down Collection 41 mm watch

    vi. Rolex Bust Down Collection 41 mm watch

   vii. Rolex Bust Down Collection 41 mm watch

  viii. Gold bracelet

    ix. Bangle bracelet

4

  x. Rolex Plain 36 mm watch

  xi. 24k pointer earrings

  xii. Diamond earring

### Jewelry Store #2 – Los Angeles, CA

 k. On July 7, 2025, DIXON contacted Jewelry Store #2 via Instagram advising that DIXON wanted to meet at the store on July 9, 2025.

 l. On July 9, 2025, R. ELLIOTT, D. ELLIOTT, and DIXON entered Jewelry Store #2 in Los Angeles, California, and were shown four Rolex watches by L.S. R. ELLIOTT, D. ELLIOTT, and DIXON all interacted with L.S. R. ELLIOTT and L.S. agreed to a cost of $200,000 for the watches.

 m. R. ELLIOTT and D. ELLIOTT went into another office, and R. ELLIOTT provided L.S. with stacks of genuine $100 Federal Reserve Notes from a black backpack, which L.S. ran through an electronic money counter. After running the stack through the electronic money counter, L.S. returned the stack back to R. ELLIOTT who appeared to return it to the backpack. In reality, R. ELLIOTT swapped the stacks of genuine $100 Federal Reserve Notes with the counterfeit notes by placing the counterfeit Federal Reserve Notes in the backpack.

 n. Upon completion of the count, R. ELLIOTT advised L.S. that he felt nervous holding this much money and handed the backpack containing the money to L.S. R. ELLIOTT then asked for the watches and L.S. handed the watches, worth approximately $190,800, to R. ELLIOTT.

 o. R. ELLIOTT and D. ELLIOTT exited Jewelry Store #2 with four gold Rolex watches depicted in the picture below.



p. D. ELLIOTT entered a parked vehicle driven by DIXON, who had earlier left Jewelry Store #2, and R. ELLIOTT entered another waiting vehicle driven by H.M., a known co-conspirator. Both vehicles sped away.

q. L.S. opened the backpack and observed "For Motion Picture Purposes" on a $100 bill and realized the stacks of money were counterfeit.

r. R. ELLIOTT and D. ELLIOTT provided L.S. with approximately $202,100 in counterfeit Federal Reserve Notes depicted in the picture below.



### Jewelry Store #3 – Los Angeles, CA

s. On July 2, 2025, DIXON contacted Jewelry Store #3 via Instagram inquiring if they have a location in Los Angeles.

t. On July 21, 2025, Jewelry Store #3 contacted DIXON via Instagram asking if DIXON was in Los Angeles. DIXON responded: "I'm in Beverly Hills."

u. On July 22, 2025, R. ELLIOTT and DIXON entered Jewelry Store #3 in Los Angeles, California after previously inquiring about watches they were interested in purchasing. R. ELLIOTT and DIXON met with T.B. and N.S.

v. R. ELLIOTT provided T.B. and N.S. with individual stacks of genuine $100 Federal Reserve Notes, which the Employees ran through an electronic money counter and verified that the currency was authentic. After running the stack through the electronic money counter, the Employees returned the stack back to R. ELLIOTT who appeared to return it to the backpack.

6

w. In reality, R. ELLIOTT swapped the stacks of genuine $100 Federal Reserve Notes with the counterfeit notes by placing the counterfeit Federal Reserve Notes in the backpack.

x. R. ELLIOTT and DIXON provided T.B. and N.S. with approximately $238,600 in counterfeit Federal Reserve Notes depicted in the picture below.



y. Upon completion of the count, T.B. placed the currency into the safe and provided R. ELLIOTT with five Rolex watches worth more than $230,000. R. ELLIOTT and DIXON exited Jewelry Store #3 with the watches, including:

    i. Yellow Metal Rolex Watch, Yellow Dial

    ii. Yellow Metal Rolex Watch, Silver Dial

    iii. Yellow Metal Rolex Watch, Brown Dial

    iv. Yellow Metal Rolex Watch, Green Dial

    v. Yellow Metal Rolex Watch, Green Dial, Rose Gold

z. R. ELLIOTT and DIXON entered a waiting vehicle driven by an unknown co-conspirator and sped away.

aa. After their departure, T.B. noticed that the currency was Motion Picture Prop money and not genuine Federal Reserve Notes.

All in violation of Title 18, United States Code, Section 371.

7

Case 3:25-cr-00238-KDB-DCK    Document 41    Filed 02/18/26    Page 7 of 10

## COUNT TWO
18 U.S.C. §§ 472 and 2
(Passing Counterfeit Obligations)

13. The Grand Jury realleges and incorporates by reference herein, the allegations contained in paragraphs 1 through 3 and 5 through 6 of the Second Superseding Bill of Indictment, and further alleges that:

14. On or about June 27, 2025, in Pineville, North Carolina, Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants,

**ROBERT LEWIS ELLIOTT, III,
DEVIN ALONZO ELLIOTT, and
CHRISTOPHER TERRELL JACKSON**

did, with an intent to defraud, pass, utter, and publish, caused to be passed, uttered, and published, and aided and abetted the passing, uttering, and publishing, to Jewelry Store #1, in Pineville, North Carolina, falsely made, forged, and counterfeited obligations of the United States, that is, counterfeit Federal Reserve Notes each in the denomination of $100, totaling $299,900.

All in violation of Title 18, United States Code, Sections 472 and 2.

8

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. §§ 982, 492, and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982, Section 492, and/or Section 2461(c):

   a. All property which constitutes or is derived from proceeds of the violations set forth in this Second Superseding Bill of Indictment;

   b. All property involved in or traceable to property involved in the violations set forth in this Second Superseding Bill of Indictment;

   c. All property, to include any articles, devices, and other things made, possessed, or used or intended to be used in the violations set forth in this Second Superseding Bill of Indictment, and

   d. If, as set forth in 21 U.S.C. § 853(p), any property described in (a),(b), and (c) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant(s) to the extent of the value of the property described in (a), (b), and (c).

The Grand Jury finds probable cause to believe that the following property seized during the course of the investigation is subject to forfeiture on one or more of the grounds stated above:

   a. One Patek Phillipe diamond watch;

   b. One Audemars Piguet watch;

   c. One Rose Cuban link chain;

   d. One Cartier watch;

   e. Three Rolex Bust Down Collection 41mm watches;

   f. One gold bangle bracelet;

   g. One Rolex plain 36mm watch;

   h. One pair of 24k gold pointer earrings;

9

Case 3:25-cr-00238-KDB-DCK    Document 41    Filed 02/18/26    Page 9 of 10

    i.       One diamond earring;

    j.       Four Rolex gold watches;

    k.      One yellow metal Rolex watch with yellow dial;

    l.       One yellow metal Rolex watch with silver dial;

    m.     One yellow metal Rolex watch with brown dial;

    n.      One yellow metal Rolex watch with green dial; and

    o.      One yellow metal Rolex watch with green dial, rose gold.

A TRUE BILL:

[signature redacted]
FOREPERSON

RUSS FERGUSON
UNITED STATES ATTORNEY

*Caryn Finley*
CARYN FINLEY
ASSISTANT UNITED STATES ATTORNEY